**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| JULIO R. MILLAN, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL NO. 23-2600 |
| | : | |
| MAYOR J. WILLIAM REYNOLDS, | : | |
| BETHLEHEM POLICE, *et al*. | : | |
| Defendants. | : | |

**MEMORANDUM**

**Schmehl, J. /s/ JLS**                                                             **August 23, 2024**

I.     **INTRODUCTION**

Before the Court is the motion of Defendants, Mayor J. William Reynolds ("Mayor

Reynolds"), Sergeant Blake Kuntz ("Sergeant Kuntz"), and Bethlehem Police (collectively

"Defendants"), to dismiss the Amended Complaint filed by Plaintiff, Julio R. Millan ("Plaintiff"

or "Millan"). Millan filed an Amended Complaint raising federal violations of his First, Fourth,

Eighth, and Fourteenth Amendment rights and a negligence cause of action. Based upon the

parties' submissions, Defendants' motion will be granted, and this matter will be dismissed.

II.    **BACKGROUND**

On May 20, 2023, there was an LGBTQ+ event in a public park. (See Bethlehem Police

Dept. Incident/Offense Report, ECF 18, pp. 28-30, ("Report")) Three people at the event and

Mayor Reynolds called the police because Millan was making people uncomfortable by his

"argumentative questioning, lack of distance in confronting individuals face-to-face, and

abnormal physical behaviors like crouching down and staring." (Report; ECF 17 at ¶ 11.) To

respond to the situation, Sergeant Kuntz allegedly grabbed Millan's left hand, twisted his wrist,

and yanked it down. (ECF 17 at ¶ 12; ECF 16, p. 4 ¶ 4.)  Millan asserts that Sergeant Kuntz then

1

removed him by force while "constantly touching and telling [him] where to go" and told him

not to return. (ECF 16 at 4.1, ¶ 5; Report at 2.) The entire interaction between Sergeant Kuntz

and Millan was captured on body camera footage. (ECF 17, Ex. A.)

On July 6, 2023, Millan filed a Complaint against Mayor Reynolds. (*See* ECF 1.) On

October 31, 2023, Millan filed a Complaint against Sergeant Kuntz. (Case No. 23-4241.)  This

Court consolidated both actions by Order on January 18, 2024. (ECF 15.) Millan then filed an

Amended Complaint on February 5, 2024. (ECF 16.) Defendants responded by filing a Motion to

Dismiss on February 20, 2024. (ECF 17.) Finally, Millan filed a response to Defendants' Motion

to Dismiss on March 1, 2024. (ECF 18). Although far from clear from the face of his Amended

Complaint, Millan seemingly seeks damages for alleged violations of his First, Fourth, Eighth,

and Fourteenth Amendment rights. (ECF 16 at 1.A, ¶ 1; ECF 17 at ¶¶ 7-9.) He also seems to

assert a negligence claim against Sergeant Kuntz. (ECF 17 at ¶ 9.)

## III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs the Court's motion to dismiss analysis.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the

plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662

F.3d 212, 220-21 (3d Cir. 2011) (*citing Iqbal,* 556 U.S. at 678). While the plausibility standard is

not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer

possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550

U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's

liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (*quoting Twombly*, 550 U.S. at 557).

The Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) "[i]t must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (*quoting Iqbal*, 556 U.S. at 675, 679). *See Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010).

In our analysis of a motion to dismiss, the Court of Appeals allows us to also consider documents "attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

## IV.   DISCUSSION

Defendants' motion seeks dismissal of Plaintiff's Amended Complaint due to his failure to state a claim on which relief can be granted. Although far from clear from the face of his Amended Complaint, Millan is seemingly seeking damages for alleged violations of his First, Fourth, Eighth, and Fourteenth Amendment rights against Mayor Reynolds, Sergeant Kuntz, and the city of Bethlehem. (ECF 16 at 1.A, ¶ 1; 1.A.1, ¶ 1.) He also seems to assert a negligence claim against Sergeant Kuntz. The Court will now address each claim.

### A.  "Municipal Liability" (*Monell*) Claim

Millan filed suit against Mayor Reynolds and Sergeant Kuntz in their individual and official capacities. As Millan seeks to impose liability on them in their individual capacities for official actions taken under color of state law, their official capacity actions act as another way to sue the municipality of which they are agents. *See Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988) (citing *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 690 n. 55  (1978)). A claim against a municipality for a violation of civil rights under 42 U.S.C. §1983 is subject to the framework of *Monell.* Under *Monell*, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." 436 U.S. at 691. In other words, employment of a tortfeasor is insufficient grounds to hold a municipality legally responsible. *Id.*

Instead, in order to attribute liability to the City of Bethlehem, Millan must prove (1) an underlying constitutional violation, (2) the identity of the officials or governmental bodies with final policy making authority, and (3) whether they "have, through their decisions, 'caused the deprivation of rights at issue by policies which affirmatively command that it occur or by acquiescence in a longstanding practice or custom which constitutes the "standard operating procedure" of the local governmental entity.'" *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1062 (3d Cir. 1991) (quoting  *Jett v. Dallas Independent School District*, 491 U.S. 701, 737 (1989)). Millan must also prove that the relevant policy was the "moving force" behind the constitutional violation, *Monell*, 436 U.S. at 694, and the policymakers acted with "deliberate indifference" when they enacted it. *Simmons v. City of Philadelphia*, 947 F.2d at 1059–60 (quoting *City of Canton v. Harris,* 489 U.S. 378 (1989)).

Under *Monell*, "[p]roof of a single incident of unconstitutional activity is not sufficient…unless proof of the incident includes proof that it was caused by an existing,

unconstitutional municipal policy" *Pelzer v. City of Philadelphia*, 656 F. Supp. 2d 517, 532

(E.D. Pa. 2009) (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 823–824 (1985)). However,

to establish that a practice or custom violates §1983, a plaintiff must demonstrate that the policy

is "'so permanent and well settled' as to virtually constitute law." *Andrews v. City of*

*Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Monell*, 436 U.S. at 690). There must

also be a "direct causal link" between the custom or practice and the resulting deprivation. *Bd. of*

*Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

Here, there is no evidence to support a *Monell* claim. Millan does not plead any facts to

prove a policy, much less a "longstanding practice or custom" so well-established as to "virtually

constitute law," which could have acted as the "moving force" behind the constitutional

violations that he allegedly suffered. There is therefore no policy alleged in which Mayor

Reynolds and Sergeant Kuntz could have acted with "deliberate indifference" in their

interactions with Millan. Further, a direct causal link between a policy and the resulting

deprivation of his rights cannot be proven, and there is also no evidence of other similar

incidents tending to prove the existence of a policy. Instead, Millan simply asserts "municipality

liability" without any factual support whatsoever, *see* ECF 16 at 1.A.1, ¶1, and the use of bald

legal conclusions is contrary to the pleading requirements of Federal Rule of Civil Procedure 8.

*See Ashcroft v. Iqbal*, 556 U.S. 662. Additionally, even if Millan were to be operating under a

*respondeat superior* theory, as already stated, such a theory cannot impose liability on a

municipality under *Monell*. Accordingly, all of Plaintiff's claims against the City of Bethlehem

are dismissed.

### B. First Amendment

To prevail on a First Amendment retaliation claim under 42 U.S.C. § 1983, Millan must demonstrate that (1) "he engaged in 'constitutionally protected conduct," (2) the Defendants "engaged in 'retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights,'" and (3) "'a causal link [existed] between the constitutionally protected conduct and the retaliatory action.'" *Palardy v. Twp. of Millburn*, 906 F.3d 76, 80–81 (3d Cir. 2018) (*quoting Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006)). Additionally, the right to peaceably assemble is often given a nearly identical analysis to that of free speech by courts. *See De Jonge v. State of Oregon*, 299 U.S. 353, 364 (1937) ("The right of peaceable assembly is a right cognate to those of free speech and free press and is equally fundamental.").

Here, Millan fails to allege any protected conduct or speech. Instead, he claims he sat down at the event in the park and asked the speakers "if they are open for questions," and when they instructed him to wait until after the event was finished, he stood up and walked around. (ECF 16 at 1B.) Millan fails to plead that he was engaged in constitutionally protected conduct, and even if he did, his First Amendment claim would still fail because there is no evidence that Defendants engaged in retaliatory conduct. Millan was neither arrested nor given a citation by Sergeant Kuntz. (Report, pp. 28-30.) Further, he admits that three people and Mayor Reynolds only involved the police because he was making "people feel uncomfortable." (ECF 16 at 1B.) Accordingly, Millan's First Amendment retaliation claim fails.

Moreover, Defendants, as government officials, are entitled to qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Malley v. Briggs*, 475 U.S. 335 (1986). In *Harlow,* the Supreme Court held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate *clearly*

6

*established* statutory or constitutional rights of which a reasonable person would have known."

457 U.S. at 818 (emphasis added); *see also Reichle v. Howards,* 566 U.S. 658, 664–65 (2012)

("The 'clearly established' standard is not satisfied here. This Court has never recognized a First

Amendment right to be free from a retaliatory arrest that is supported by probable cause; nor was

such a right otherwise clearly established at the time of…arrest."). Additionally, in *Malley*, the

Supreme Court recognized that "as a matter of public policy, qualified immunity provides ample

protection to all but the plainly incompetent or those who knowingly violate the law." 475 U.S.

at 335. Claims for qualified immunity are thus analyzed under a two-step process.

> First, the court must determine whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation. If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity…[However, o]nce it is determined that evidence of a constitutional violation has been adduced, courts evaluating a qualified immunity claim move to the second step of the analysis to determine whether the constitutional right was clearly established. That is, in the factual scenario established by the plaintiff, would a reasonable officer have understood that his actions were prohibited? The focus in this step is solely upon the law. If it would not have been clear to a reasonable officer *what the law required* under the facts alleged, he is entitled to qualified immunity.

*Bennett v. Murphy,* 274 F.3d 133, 136–37 (3d Cir. 2002).

Here, there was no constitutional violation, as Millan was neither arrested nor given a

citation, so the inquiry should end there. Further, even if Sergeant Kuntz's behavior towards

Millan rose to the level of a constitutional violation, his actions are entitled to qualified immunity

because it was not clearly established at the time of his interaction with Millan that asking a

person who is making multiple people uncomfortable to not return would give rise to a First

Amendment violation. Additionally, he did not act on plain incompetence or knowingly violate

the law, and "this accommodation for reasonable error exists because 'officials should not err

always on the side of caution' because they fear being sued." *Hunter v. Bryant*, 502 U.S. 224,

229 (1991) (*quoting* Davis v. Scherer, 468 U.S. 183, 196 (1984)).

Meanwhile, Mayor Reynolds had no direct interaction with Millan, so he does not need to raise a qualified immunity defense. Further, to the extent that Mayor Reynolds was acting in his official capacity by involving the police due to others' concern over Millan's awkward behavior, Pennsylvania courts have recognized his entitlement to absolute immunity. *See Lindner v. Mollan*, 544 Pa. 487, 490, 677 A.2d 1194, 1195 (1996) (stating that "high public officials" are entitled to absolute privilege for statements "made or [actions] taken in the course of the official's duties or powers and within the scope of his authority...or jurisdiction."); *see also Kramer v. City of Pittsburgh,* 2020 WL 5797940, at *4 (W.D. Pa. Sept. 29, 2020). Accordingly, Plaintiff's First Amendment cause of action is dismissed.

## C. Fourth Amendment

Plaintiff's Fourth Amendment cause of action can be split into two claims: (1) a false arrest claim and (2) an excessive force and battery claim.

### 1. False Arrest

A Fourth Amendment seizure is objectively analyzed under a reasonable person standard, in which a seizure occurs only when, under the totality of circumstances, a reasonable person believes that he or she was not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). To prevail on a claim under 42 U.S.C. § 1983, Millan must demonstrate (1) "a violation of a right secured by the Constitution and the laws of the United States" (2) "by a person acting under color of state law." *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995) (*quoting Moore v. Tartler,* 986 F.2d 682, 685 (3d Cir.1993)). More specifically, to succeed on his false arrest claim, Millan must prove that he was arrested without probable cause. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995). However, '[a]n informal admonition by police not to transgress the law and a warning of potential legal consequences for such

transgression cannot constitute an 'arrest.'" *Daniels v. Cnty. of Media*, 2001 WL 487859, at \*4 (E.D. Pa. Mar. 5, 2001), *aff'd sub nom. Daniels v. Borough of Media*, 29 F. App'x 100 (3d Cir. 2002).

Here, Millan did not suffer a deprivation of liberty that is sufficient to prevail on a false arrest claim under the Fourth Amendment. Plaintiff was never arrested or even handed a citation. Like in *Dibella v. Borough of Beachwood*, in which the Third Circuit did not recognize a Fourth Amendment seizure because the plaintiffs were not arrested, required to post bail, banned from traveling, or required to report to Pretrial Services, in this case, Millan too was never restrained of his liberty in any of those ways. 407 F.3d 599 (3d Cir. 2005). Additionally, Sergeant Kuntz only warned Millan of potential legal consequences (arrest) that may result from his behavior that was making people uncomfortable, and his words cannot therefore be seen as a threat to unreasonably deprive him of his liberty. Given the totality of circumstances, a reasonable person in Millan's position would not have felt like he or she was falsely arrested, and just because Millan felt that he was does not constitute a seizure in violation of the Fourth Amendment. *See California v. Hodari D.*, 499 U.S. 621, 628 (1991) ("*Mendenhall* establishes that the test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person.").

The body camera footage from Sergeant Kuntz serves as further evidence. (ECF 17, Ex. A.) The Supreme Court has held that courts should view facts "in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). The footage clearly shows around 6:02 that Sergeant Kuntz placed his left hand on Millan's right shoulder and did not, as Millan alleges, twist his wrist or yank it down. Further, at around 6:10 in the video, Sergeant Kuntz tells Millan

9

that he is "going to get arrested today if [he does] not stop" to inform him of the potential legal

consequences to his actions. Lastly, around 7:15 in the video, Sergeant Kuntz tells Plaintiff that

"multiple people feel uncomfortable" due to his behavior. Given the totality of the circumstances

depicted on the videotape, it is objectively clear that there was no unreasonable "arrest" in

violation of the Fourth Amendment. Moreover, even though Millan seems to allege that the

footage was doctored, there is no proof to his allegation besides a groundless accusation towards

Captain Michelle Kott and Bethlehem Police Department that violates the pleading requirements

of F.R.C.P. 8. (*See* ECF 16 at 3, ¶ 2; ECF 18 at 33).

Furthermore, the Amended Complaint does not seem to assert a Fourth Amendment

cause of action against Mayor Reynolds, but if it does, that action must be dismissed as well. To

the extent Mayor Reynolds could be liable, it is inapplicable here because he did not instigate

any "arrest" of Millan. *See Berg v. Cnty. of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000) ("§

1983 liability for an unlawful arrest can extend beyond the arresting officer to other officials

whose intentional actions set the arresting officer in motion."); *see also Helen v. Turner*, 2020

WL 4582018, at *17 (D.N.J. Aug. 10, 2020) ("To hold a public official liable under Section 1983

for causing a false arrest or imprisonment, a plaintiff must show that the official 'instigated' the

arrest."). Instead, "[t]he proper inquiry in a section 1983 claim based on false arrest ... is not

whether the person arrested in fact committed the offense but whether the arresting officers had

probable cause to believe the person arrested had committed the offense." *Groman v. Twp. of*

*Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) (*quoting Dowling v. City of Phila.*, 855 F.2d 136,

141 (3d Cir.1988)). Millan fails to allege that Sergeant Kuntz did not believe or should not have

believed the reports that Millan's behavior was making people uncomfortable. *See United States*

*v. Katzin*, 769 F.3d 163, 171 (3d Cir. 2014) ("Where the particular facts of a case indicate that

law enforcement officers 'act[ed] with an objectively "reasonable good-faith belief" that their conduct [was] lawful, or when their conduct involve[d] only simple, "isolated" negligence,' there is no illicit conduct to deter.") (internal citations omitted). Accordingly, Plaintiff's false arrest claim is dismissed.

### 2. Excessive Force and Battery

An excessive force claim in the arrest context is analyzed under the Fourth Amendment's reasonable person standard. *Graham v. Connor,* 490 U.S. 386, 394–95 (1989) ("Where…the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment…*all* [such] claims…should be analyzed under the Fourth Amendment and its "reasonableness" standard."). To prevail on an excessive force claim as an unreasonable seizure under the Fourth Amendment, Plaintiff must prove that (1) "a 'seizure' occurred" and (2) "it was unreasonable." *Est. of Smith v. Marasco*, 430 F.3d 140, 148 (3d Cir. 2005) (internal quotations omitted).

Here, no seizure occurred, so the excessive force claim must be dismissed. Even if a seizure occurred, however, the action must still be dismissed because Sergeant Kuntz's behavior towards Millan was objectively reasonable. To determine whether the force used in a seizure is "reasonable" under the Fourth Amendment mandates "a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (*citing Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). In this case, Sergeant Kuntz placing his hand on Millan's shoulder was objectively reasonable given that it is well-settled that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," and the reasonableness of his use of force must be assessed "from

the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Clearly, Millan was making people uncomfortable, which is why Sergeant Kuntz was brought to the scene. It was objectively reasonable for Sergeant Kuntz to direct Millan away from the event to follow through with his investigatory stop.

Furthermore, "[a] claim brought under Pennsylvania law for excessive force by a police officer is a claim for assault and battery." *Garey v. Borough of Quakertown*, 2012 WL 3562450, at *5 (E.D. Pa. Aug. 20, 2012) (*quoting Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 870 (E.D. Pa. 2000)). That is because, "[i]n making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest." *Renk v. City of Pittsburgh*, 537 Pa. 68, 76 (1994). Thus, "[t]he reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery." *Id.* Under Pennsylvania law, an "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk*, 537 Pa. at 76 (*quoting Cohen v. Lit Brothers,* 166 Pa.Super. 206, 209 (1950)). Here, however, as stated above, Sergeant Kuntz's use of "force" was objectively reasonable, and the body camera footage serves as indisputable evidence in support of that reasonableness. There is also no evidence that he intentionally attempted to cause injury to Millan. Finally, Sergeant Kuntz is entitled to qualified immunity. As such, Plaintiff's excessive force and battery claim fails and his Fourth Amendment cause of action is dismissed.

### D. Eighth Amendment Claim

Although Defendants do not specifically address Plaintiff's Eighth Amendment cause of action in their Motion to Dismiss, it still must be dismissed for failure to state a claim. Millan

states that he is setting forth a cruel and unusual punishment claim under the Eighth Amendment without offering any factual evidence or case law in support of his claim.  (ECF No. 16 at 6.) Bald legal conclusions violate the pleading requirements of F.R.C.P. 8.

To note, although no static test exists for an Eighth Amendment cruel and unusual punishment claim, it is well-settled that "the Eighth Amendment prohibits punishments which, although not physically barbarous, involve the unnecessary and wanton infliction of pain, or are grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (internal citations and quotations omitted). Additionally, the Eighth Amendment "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Id.* (*quoting Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality opinion)). Finally, the determination cannot be purely subjective, and  "judgment[s] should be informed by objective factors to the maximum possible extent." *Id.* (*quoting Rummel v. Estelle,* 445 U.S. 263, 274–275 (1980)).

Here, there is no evidence for Plaintiff to sustain a cruel and unusual punishment claim. The footage clearly shows that Sergeant Kuntz only touched Millan's shoulder briefly, and as already discussed, his actions were objectively reasonable under the circumstances. Further, as Millan states himself, he did not commit any crimes, (*See* ECF No. 16 at 4 ¶ 1), so there could not be a grossly disproportionate punishment. His claim of cruel and unusual punishment must therefore fail. Accordingly, Plaintiff's Eighth Amendment cause of action is dismissed.

### E. Fourteenth Amendment

To prevail on a § 1983 equal protection claim under the Fourteenth Amendment, Plaintiff must prove (1) his membership in a protected class and (2) that he received different treatment from that received by similarly situated individuals who are not in his protected class. *Keenan v.*

*City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992). As such, Millan "must allege *both* protected-class status and differential treatment of similarly situated non-class members." *D'Altilio v. Dover Twp.*, 2007 WL 2845073, at *8 (M.D. Pa. Sept. 26, 2007) (*citing Keenan*, 983 F.2d at 465) (emphasis added).

Here, Millan fails to allege differential treatment. Millan was aware that three people and Mayor Reynolds involved the police because his behavior was making people uncomfortable. (ECF 16 at 1B.) He did not allege, however, that others were acting abnormally at the event as well but did not have the police called on them. There is also no evidence, nor is it alleged that Sergeant Kuntz's interaction with Millan was motivated by an unjustifiable standard such as race or gender or that he intended to prevent Millan from exercising his constitutional rights. Therefore, Plaintiff's Fourteenth Amendment cause of action is dismissed.

### F. Negligence

If Plaintiff is asserting a negligence cause of action against Defendants, which is far from clear from the face of his Amended Complaint, it must be dismissed because none of his allegations fall under the exceptions to the Tort Claims Act. As stated in relevant part in the Political Subdivision Tort Claims Act, "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S. §8451. Here, Defendants are being sued in their official capacities as employees of Bethlehem Police, and they are thus subject to the Tort Claims Act. 42 Pa.C.S. §8545 ("An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency….").

14

Under the Tort Claims Act, a local agency is liable for damages resulting on account of an injury to a person or property *only* when two conditions are met: (1) "The damages would be recoverable under common law or a statute;" and (2) "The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b)." 42 Pa.C.S. §8542. Subsection b lists nine exceptions that may result in the imposition of liability:  (1) Vehicle liability; (2) Care, custody or control of personal property; (3) Real property (4) Trees, traffic controls and street lighting (5) Utility service facilities; (6) Streets; (7) Sidewalks; (8) Care, custody or control of animals and (9) Sexual abuse. *Id.* Otherwise, the local agency and its employees are protected by governmental immunity.

Here, Plaintiff fails to allege any of these exceptions to immunity. Accordingly, his negligence cause of action is dismissed.

V.      **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is granted. As any amendment would be futile, Plaintiff's Amended Complaint is dismissed with prejudice.

15